UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
NO. 12-81347-CIV-MARRA

MATTHEW SPARGER and
EQUILLA SPARGER,

      Plaintiffs,

v.

NEWMAR CORPORATION,
CUMMINS INC., and
SPARTAN MOTOR CHASSIS, INC.,

      Defendants.
_____/

## OMNIBUS OPINION AND ORDER

This cause is before the Court upon Defendant Cummins Inc.'s Motion *in Limine* to Exclude Expert Testimony of Robert Richardson (DE 55), Motion to Exclude Testimony and Opinion of Robert Richardson pursuant to Fed. R. Civ. P. 37 (DE 56), and Motion for Final Summary Judgment (DE 80). The Motions are ripe for review. For the reasons stated below, Defendant Cummins Inc.'s Motion to Exclude pursuant to Fed. R. Civ. P. 37 is **DENIED**, Motion *in Limine* is **GRANTED IN PART and DENIED IN PART**, and Motion for Final Summary Judgment is **DENIED**.

## I. Background

On August 1, 2009, Plaintiffs purchased a Newmar 2008 King Aire DSL recreational vehicle ("RV") for $477,977.96. The RV contained an engine manufactured by Defendant Cummins, Inc. ("Cummins"). There is no dispute that Cummins provided Plaintiffs with an express written warranty of the engine. However, Plaintiffs and Defendant provide two different versions of the written warranty. (DE 84-3).

Plaintiffs contend that they experienced problems with the RV early and often, and that the

RV spent 60 days at Cummins' repair facilities.  Sparger Aff., ¶ 60 (DE 84-3).  The last repair at a Cummins-authorized repair shop was completed on September 14, 2011.  Sparger Dep., p. 18 (DE 81-1).  The RV was then kept for a month by another facility for more repairs, and Plaintiffs have not used the RV since October, 2011.  *Id.*  Plaintiffs state that they sent a Motor Vehicle Defect Notice to Cummins on August 26, 2011, and that Cummins elected not to perform the necessary repairs.  On August 28, 2013, Plaintiffs' expert inspected the RV and found an oil leak.  Richardson Aff. (DE 84-1).  The RV's mileage was 17,680.80.  *Id.*

On September 25, 2012, Plaintiffs initiated this action against Newmar Corporation, the manufacturer of the RV, Spartan Motor Chassis, Inc., the chassis supplier, and Cummins in state court, and Defendants removed on the basis of diversity of citizenship jurisdiction, 28 U.S.C. § 1332(a).  Thereafter, Plaintiffs have settled their claims with  Newmar Corporation and Spartan Motor Chassis, Inc., leaving Cummins as the only remaining Defendant.  Plaintiffs bring two claims against Cummins: breach of warranty (Count III), and violation of the Magnuson-Moss Warranty Enforcement Act, 15 U.S.C. 2301, *et seq.* (Count IV).  (DE 1).  Plaintiffs acknowledge that approximately $18,000 in repair costs have been covered by the warranty.  Resp., p. 2, n. 3 (DE 84).  However, Plaintiffs are seeking a refund of their purchase price adjusted for the use of the RV and reduced by the amount paid in settlement by other Defendants.  Plaintiffs are also seeking  attorney's fees.

In its Motion for Final Summary Judgment, Cummins contends that Plaintiffs only presented the RV to Cummins-authorized repair facilities a few times, that all warrantable failures presented were remedied, that Cummins lacked notice of any other problems, and that Plaintiffs cannot present any admissible evidence of damages.  Cummins also moves to exclude the opinions of Plaintiffs'

expert, Robert Richardson, a mechanic, due to non-compliance with the scheduling order and disclosure rules, as well as the expert's lack of proper qualifications and failure to use reliable methodologies to form the opinions.  The Court will first address the Motions to exclude Robert Richardson's expert opinions.

## II.  Motion to exclude Plaintiffs' experts' opinions pursuant to Fed. R. Civ. P.  26 and 37

Cummins argues that Plaintiffs failed to comply with the Court's scheduling order and with the Federal Rule of Civil Procedure 26(a)(2)(B).  Defendant therefore seeks exclusion of Plaintiffs' expert's testimony as a sanction under the Federal Rule of Civil Procedure 37(c).  The Court declines to exclude Robert Richardson's opinion on this basis.

If a party fails to provide an adequate expert witness disclosure required by Rule 26(a),[1] the witness' testimony may be excluded.  *See* Fed. R. Civ. P. 37(c)(1).  Nevertheless, the nondisclosing party may avoid exclusion if it carries the burden of showing that failure to disclose was substantially justified or harmless.  *Id.*; *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006); *Two Men & a Truck Intern., Inc. v. Residential & Commercial Transp. Co., LLC*, 4:08CV67-WS/WCS, 2008

---

[1]A retained expert's disclosure must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii) the facts or data considered by the witness in forming them;
(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

WL 5235115, at *2 (N.D. Fla. 2008).  The following factors are relevant to the analyses: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Two Men & a Truck Intern., Inc.*, 2008 WL 5235115, at *2 (citing *Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir.2003)).

Here, Plaintiffs' expert report was filed one day late on January, 15, 2014.  The trial in this case is set for October, 2014, and dispositive motions were due by May 5, 2014.  (DE 30).  Plaintiffs provided the expert's affidavit explaining that he experienced a computer malfunction, which prevented him from e-mailing the report on January 14, 2014.  (DE 69-1).  The original expert disclosure contained Robert Richardson's resume and report, but did not include a list of publications and cases in which he had testified as an expert.  On February 19, 2014, Plaintiffs filed Robert Richardson's Supplemental Report, including the list of cases and specifying that the expert did not publish any articles in the last 10 years.  (DE 68).  Defendants' expert disclosures were due two weeks after the inspection of the RV, which the parties agreed to have on February 26, 2014.

Thus, Cummins was not surprised by the evidence that would be offered, Plaintiffs cured the lack of information about the cases and articles, no disruption to the case schedule resulted from a slight delay in the production of the complete report, and Cummins had sufficient time to evaluate the complete report before the deadline to file dispositive motions.  Accordingly, the delay in disclosure was harmless, and Robert Richardson's opinions will not be excluded on this basis. Cummins also challenges the expert's qualifications and methods employed to arrive at his opinions regarding the alleged defects of the RV and its diminished value.  The Court will now address these

4

arguments.

### III. Motion *in Limine*

The Federal Rules of Evidence provide that

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"'[T]he task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand' is assigned to the district court." *United Fire & Cas. Co. v. Whirlpool Corp.,* 704 F.3d 1338, 1341 (11th Cir. 2013)(quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993)).

In *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir 2005), the Eleventh Circuit explained:

To fulfil their obligation under *Daubert*, district courts must engage in a rigorous inquiry to determine whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence.

*Id*. at 1291-92 (citation omitted).

District courts should consider four factors when assessing the reliability of a scientific expert's testimony: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and

publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *United Fire & Cas. Co.,* 704 F.3d at 1341 (citing *Daubert,* 509 U.S. at 593-94). "At the same time, the [Supreme] Court has emphasized that these factors are not exhaustive and are intended to be applied in a 'flexible' manner." *Id.* (quoting *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999)).

Robert Richardson is a mechanic. With respect to experts with technical rather than scientific knowledge the Supreme Court in *Kumho Tire* concludes that:

> *Daubert's* general holding – setting forth the trial judge's general "gatekeeping" obligation – applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *See* Fed. Rule Evid. 702. We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert,* the test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.

526 U.S. at 141-42.

The objective of *Daubert's* gatekeeping requirement is to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. *Daubert* also reminds litigants that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596.

## 1. Qualifications

Robert Richardson holds an Associates Degree in automotive technology, and has been an ASE Certified L1 Master Technician since 1997. He served as an automotive technician and service

manager between 1997 and 2006.  Since 2006, Robert Richardson has taught automotive technology at the University of Central Florida, University of Chicago, and Lincoln College of Technology, as well as engaged in college automotive textbook editing and consulting.  Thus, he is qualified to opine on the mechanical condition of the RV.

However, Robert Richardson holds no certifications and has had no experience in appraising vehicles.  Additionally, Cummins attacks the methodology Robert Richardson used to determine that the engine is defective and to determine current value of the RV.

**2. Opinion on value**

Robert Richardson states that because the engine and the starter are defective, the RV can only be sold for the scrap value of 40%.  However, no method of arriving at this conclusion is described. Lack of any methodology coupled with the expert's lack of qualifications to appraise vehicles mandate exclusion of Robert Richardson's opinion on the value of the RV.

**3. Opinions on defects**

While no intrusive diagnostic procedure was performed, Robert Richardson visually inspected the engine and found an oil leak.  Additionally, he reviewed the detailed work orders for the repairs that had been performed.  On the basis of the visual inspection, the repair history, the RV's low mileage, and his automotive repair experience, Robert Richardson concludes that: (1) various electrical problems, including the display panel for the "E plex control system," have not been properly diagnosed and remedied; (2) a Cummins dealer's repair of the starter which left a wire running the length of the RV and exposed in the cargo area was not a proper repair; (3) after an engine light had come on and fault code 1922 discovered on August 5, 2011, a proper repair was not performed at a Cummins facility in Michigan, and Plaintiffs were erroneously advised to drive the

RV to Florida; (4) subsequently, the engine experienced a catastrophic failure resulting in the replacement of a cylinder, piston, cylinder head and associated parts on August 15-16, 2011; and (5) as a result of the catastrophic failure, the crankshaft of the engine was damaged becoming "slightly out of round," wearing out the seal prematurely, and resulting in the oil leak. Robert Richardson further opines that the engine has not been properly repaired, that it is defective, and that the entire engine should have been replaced.

A mechanic's visual inspection of an engine may be an acceptable way of identifying an engine defect for purposes of evaluating admissibility of expert testimony under the Federal Rule of Evidence 702. *See Correa v. Cruisers, a Div. of KCS Intern., Inc.*, 298 F.3d 13, 26 (1st Cir. 2002) (it is "a matter of common sense that a visual inspection, including observation of excessive smoke and 'fouled up' spark plugs, would be one acceptable way for a mechanic or engineer to detect an engine problem"). Here, Robert Richardson visually inspected the RV observing an oil leak, and an exposed starter wire. He also reviewed detailed invoices, which reveal the history of the warning signs, failures and repairs. Thus, Robert Richardson's methodology is sufficiently reliable. Further, it will be helpful to the trier of fact. In sum, Robert Richardson's opinions on the vehicle's defects are admissible. Next, the Court will address Cummins' Motion for Final Summary Judgment.

**IV. Motion for summary judgment**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

Here, Cummins argues that the warranty it presented to Matthew Sparger at his deposition,

and which Matthew Sparger identified as the warranty he had received at the time of purchase, applies in this case. In contrast, Plaintiffs state that the identification at the deposition was a mistake, and that the warranty attached to the Complaint applies. These warranties differ. Accordingly, there is a question of fact in this case. Because it is not clear which warranty governs, the Court need not address Cummins' document-specific arguments at this time. However, the Court will resolve arguments that apply to either warranty.

Cummins asserts that (a) Plaintiffs cannot show injury or damages because their expert's opinion is inadmissible and because Plaintiffs themselves are not qualified to testify as to the value of the RV, and (b) Cummins had no notice of the defect after the last repair had been completed. The Court disagrees.

The elements of a cause of action for a breach of warranty under Florida law are:

1) Facts in respect to the sale of the goods;
2) Identification of the types of warranties created, i.e. express warranty (Section 672.313, Florida Statutes (1975)); implied warranty of merchantability (Section 672.314, Florida Statutes (1975)); implied warranty of fitness for a particular purpose (Section 672.315, Florida Statutes (1975));
3) Facts in respect to the creation of the particular warranty. For example, in the case of an implied warranty of fitness for a particular purpose, the complaint should allege that the seller had reason to know the particular purpose for which the goods were purchased by the buyer and that the buyer relied on the seller's judgment in providing suitable goods. Section 672.315, Florida Statutes (1975);
4) Facts in respect to the breach of the warranty;
5) Notice to seller of breach. Section 672.607(3)(a), Florida Statutes (1975);
6) The injuries sustained by the buyer as a result of the breach of warranty.

*Davis v. Ford Motor Co.*, 63 UCC Rep. Serv. 2d 445 (S.D. Fla. 2007) (citing *Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So.2d 351 (Fla. 4 th DCA 1977)).

While Plaintiffs' expert's opinion on the value of the RV is inadmissible, the general rule is that "[a]n owner is always competent to give his opinion on the value of his property." *Meredith v.*

*Hardy*, 554 F.2d 764, 765 (5th Cir. 1977);[2] *Chmura v. Monaco Coach Corp.*, 8:04CV2054-T-24MAP, 2006 WL 709325, at *4 (M.D. Fla. Mar. 20, 2006).   Thus, Plaintiffs could testify as to the value of the RV in its present condition based on the alleged breach of the warranty.

Lastly, Cummins asserts that Plaintiffs failed to give it proper notice.   On August 26, 2011, while the RV was still at a Cummins-authorized repair facility, Plaintiffs sent Cummins notice of a defect.   (DE 84-3).   It stated that the engine was "running hot."   *Id.*   After Plaintiffs picked up the RV from that facility, they have not used it.   Nevertheless, when the expert examined the vehicle on August 28, 2013, he detected an oil leak.   This defect is consistent with the notice of the engine "running hot" that Plaintiffs had given Cummins.   Thus, Cummins has never remedied the problem Plaintiffs reported in August, 2011, and Plaintiffs have brought forth sufficient evidence of notice. Accordingly, granting summary judgment to Defendant Cummins is not proper.

## V. Conclusion

Defendant Cummins Inc.'s Motion to Exclude pursuant to Fed. R. Civ. P. 37 (DE 56) is **DENIED**, Motion *in Limine* (DE 55) is **GRANTED IN PART and DENIED IN PART**, and

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Motion for Final Summary Judgment (DE 80) is **DENIED**.

       **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 11th day of August, 2014.

<br>

_____

KENNETH A. MARRA

United States District Judge